## Ex parte GOUYET.

### (District Court, D. Montana. June 1, 1909.)

1. ALIENS (§ 40*)—FEMALES—KEEPING, HARBORING, AND MAINTAINING FOR IMPROPER PURPOSES—STATUTES—CONSTITUTIONALITY.

So much of Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), regulating the importation of aliens, as prohibits the keeping, harboring, or maintaining of a female alien for improper purposes within three years after she enters the United States, is unconstitutional; Congress having no authority to make such acts a crime, as they are within the reserved power of the states.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

2. ALIENS (§ 39*) — IMMIGRATION — REGULATION — IMPORTATION FOR IMMORAL PURPOSES.

Congress has power to prohibit the importation of aliens for immoral or undesirable purposes, and to punish any person who shall import, or attempt to import, an alien for a prohibited purpose.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 39.*]

3. INDICTMENT AND INFORMATION (§ 203*)—COUNTS—SENTENCE.

Where a sentence did not exceed the punishment authorized on the conviction on one of the counts of the indictment which was clearly sufficient, it was not erroneous because defendant was convicted on two counts, one of which was unsustainable, though the judgment record recited that the sentence imposed was for both offenses.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 651–656; Dec. Dig. § 203.*]

4. HABEAS CORPUS (§ 48*)—FEDERAL COURTS—JURISDICTION.

The power of federal courts to issue writs of habeas corpus to inquire into the cause of restraint of liberty in certain specified instances is expressly restricted by Rev. St. §§ 751, 752, 753 (U. S. Comp. St. 1901, p. 592), to the territorial jurisdiction of the court in which the application is made.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 46; Dec. Dig. § 48.*

Jurisdiction of federal courts, see note to In re Huse, 25 C. C. A. 4.]

Application for habeas corpus by Pierre Gouyet. Denied.

E. A. Carleton, for petitioner.

James W. Freeman, U. S. Atty.

BEAN, District Judge. This is an application for a writ of habeas corpus to inquire into the cause of the imprisonment of the petitioner, who is now confined in the United States prison at Leavenworth, Kan., under sentence of this court for violation of Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), entitled "An act to regulate the immigration of aliens into the United States," which reads as follows:

"Sec. 3. That the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, is hereby forbidden; and whoever shall, directly or indirectly, import or attempt to import, into the United States, any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, or whoever shall hold or attempt to hold any alien woman or girl for any such purpose in pursuance

of such illegal importation, or whoever shall keep, maintain, control, support or harbor in any house or other place, for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl, within three years after she shall have entered the United States, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than five years and pay a fine of not more than five thousand dollars; and any alien woman or girl who shall be found an inmate of a house of prostitution, or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States, and shall be deported as provided by sections twenty and twenty-one of this act."

The indictment under which the petitioner was tried and convicted contained three counts. The first charged him with importing into the United States an alien woman for the purpose of prostitution; the second, with holding or attempting to hold her for such purpose, in pursuance of such illegal importation; and the third, with keeping, harboring, and maintaining her for purposes of prostitution within three years after she had entered the United States. Upon the trial, the second count was abandoned by the government, and the defendant found guilty on the first and third counts, for which offenses he was sentenced to confinement in the penitentiary at Leavenworth for the term of 20 months.

Since the trial and conviction, the Supreme Court of the United States has decided that the provisions of the section above set out, under which the third count was framed, is unconstitutional, because Congress has no authority to make the acts therein mentioned a crime, as they are within the reserve powers of the state. Keller v. United States (decided April 5, 1909) 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737. It is therefore conceded by the government that the conviction, so far as that count is concerned, was void. On behalf of the petitioner, it is contended that the entire judgment and sentence is void, for the reasons, first, that the act of Congress making the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, a crime, is invalid, and not within the power of Congress to enact; and, second, because the conviction and sentence was on a count in the indictment which, it is now admitted, did not state a crime against the government.

In my opinion, neither of these petitions is sound. That it is within the power of Congress to prohibit the importation into this country of aliens for immoral or undesirable purposes, and to punish any person who shall import or attempt to import an alien for a prohibited purpose, is to my mind clear. It is a power which has long been exercised, and has been upheld by the Supreme Court. The third section of Act Cong. Feb. 26, 1885, c. 164, 23 Stat. 333 (U. S. Comp. St. 1901, p. 1291), which was an act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, its territories and the District of Columbia (23 Stat. 332, c. 164), provides that for every violation thereof, the offender—

"shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person

who shall first bring his action therefor, including any such alien or foreigner, who may be a party to any such contract or agreement, as debts of like amount are now recovered in the Circuit Courts of the United States."

In Lees v. United States, 150 U. S. 476, 14 Sup. Ct. 163, 37 L. Ed. 1150, it was insisted that the act referred to, so far as it imposes a penalty for violation thereof, is unconstitutional; but the court held that, since Congress had the power to exclude aliens, it might legally punish those who assisted in their importation, Mr. Justice Brewer saying:

"Given the power to exclude, it has a right to make that exclusion effective by punishing those who assist in introducing or attempting to introduce aliens in violation of its prohibition. The importation of alien laborers, who are under previous contract to perform labor in the United States, is the act denounced, and the penalty is visited not upon the alien laborer—although by the amendment of February 23, 1887 (24 Stat. 414, c. 220), he is to be returned to the country from which he came—but upon the party assisting in the importation. If Congress has power to exclude such laborers, as by the cases cited it unquestionably has, it has the power to punish any who assist in their introduction."

The same doctrine was recognized in the recent case of United States v. Bitty, 208 U. S. 393, 28 Sup. Ct. 396, 52 L. Ed. 543, which was a prosecution under the act for a violation of which the petitioner was tried and convicted. No question was raised in that case as to the power of Congress to punish the importation of aliens. The only point suggested or considered was its authority to punish the keeping or harboring of an alien for immoral purposes after she had entered the United States. If there had been any question about the general power to punish the importation of aliens, it is not probable that it would have been passed without notice by counsel and the court.

The sentence imposed upon the petitioner, while apparently for both offenses of which he was convicted, was authorized by his conviction under the first count of the indictment. It, therefore, is not only not void, but, as I understand the decisions of the United States courts, not even erroneous. Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Evans v. United States, 153 U. S. 608, 14 Sup. Ct. 939, 38 L. Ed. 839; Dimmick v. United States, 116 Fed. 825, 54 C. C. A. 329; Peters v. United States, 94 Fed. 127, 36 C. C. A. 105.

It is conceded by the attorney for the petitioner that, where a defendant is found guilty generally upon an indictment containing sufficient and insufficient counts, a judgment of conviction may properly be rendered; but his position is that, when the verdict and judgment include sufficient and insufficient counts specifically, the judgment is void and of no effect. There are some authorities holding that in such case the judgment is erroneous, and will be reversed on appeal (Enwright v. State, 58 Ind. 567); but this does not seem to be the view of the federal courts.

In the Claasen Case, supra, the defendant was tried on eleven counts of the indictment. The jury did not render a general verdict on all such counts, but found the defendant guilty on five, and acquitted him as to the others, and he was sentenced accordingly. The court held on appeal that, as the sentence did not exceed that authorized

for a single count, the judgment would not be reversed if any of the counts upon which the defendant was convicted was sufficient to support it.

In the Dimmick Case, supra, the indictment contained four counts. The defendant was found guilty on the first and fourth counts, and not guilty on the second and third. He appealed, and, among other things, assigned error in respect to the admission of testimony concerning the charge included in the fourth count, and also challenged the validity of such count. The court held, however, that:

"As the first count, and the verdict of guilty returned upon it, was sufficient to support the judgment and sentence, the question of the sufficiency of the fourth count, and the ruling on the proceedings thereunder would not be considered"—citing Claassen v. United States, supra.

In the Evans Case, supra, it was held that where a verdict of guilty was rendered upon all the counts of an indictment, and the sentence did not exceed that which might properly have been imposed upon conviction under any single count, such conviction is good, and will not be disturbed on appeal, if such count is found to be sufficient.

I do not understand that the rule announced in these cases is inapplicable to the case at bar, although the judgment record recites that the sentence imposed was for both offenses. There was no apportionment of the sentence, and the court was simply fixing the punishment for the crime for which the petitioner had been convicted, as was the fact in the cases cited. So that, upon the merits, the petitioner is not entitled to the writ prayed for.

It is proper to remark, however, in view of the point made by the district attorney, that it is doubtful whether the court has jurisdiction in the premises. The Supreme Court and the Circuit and District Courts of the United States, and the several justices and judges thereof, are given power, within their respective jurisdictions, to issue writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty in certain specified instances. Sections 751, 752, 753, Rev. St. U. S. (U. S. Comp. St. 1901, p. 592). The power thus conferred is expressly restricted to the territorial jurisdiction of the court to which the application is made. The general holding is that the Circuit and District Courts of the United States have no power or authority to issue a writ of habeas corpus to be sent out of their respective jurisdictions (Church on Habeas Corpus, § 108; In re Boles, 18 Fed. 75, 1 C. C. A. 48; Ex parte Kenyon, 14 Fed. Cas. 353 [No. 7,720]; In re Bickley, 3 Fed. Cas. 332 [No. 1,387]), although I am advised that Judge Landis, of the district of Illinois, has discharged prisoners confined in the Leavenworth prison, probably on the theory that the court imposing the sentence has jurisdiction to inquire on habeas corpus into the validity thereof.

In any event, however, the petition will be denied.