## UNITED STATES ex rel. BELARDI v. DAY, Commissioner of Immigration.

### No. 4401.

Circuit Court of Appeals, Third Circuit.

June 15, 1931.

Adrian Bonnelly, of Philadelphia, Pa., and G. M. Cusumano, of New York City, for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and Oliver Randolph, Asst. U. S. Atty., of Newark, N. J., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

After a hearing at Ellis Island in New York Harbor the Department of Labor ordered that Palleschi be deported. Whereupon he surrendered himself to the Commissioner of Immigration at the Port of New York, resident at Ellis Island, and Bellardi, as his next friend, filed in the District Court of the United States for the District of New Jersey a petition for a writ of habeas corpus alleging that Palleschi (whom we shall call the relator) was unlawfully restrained of his liberty and praying that he be discharged. One of the judges of the District Court issued the writ; the Commissioner of Immigration at the Port of New York, to whom it was addressed, obeyed it by producing the relator before the judge in New Jersey under circumstances to which we shall advert presently; the judge dismissed the writ and remanded the relator to the custody of the Commissioner. This appeal followed.

The one question properly here for review concerns the jurisdiction of the District Court of the United States for the District of New Jersey to entertain the petition for a writ of habeas corpus, to issue the writ and discharge the alien. On this question the relator makes two contentions in the alternative, namely, that the District Court for the District of New Jersey (or any judge thereof) had jurisdiction to issue the writ and follow the case to the end, or, if it had not such jurisdiction and in consequence unlawfully issued the writ, the court nevertheless had power, on the actual production of the relator, to hear the case and discharge him.

The first contention is predicated on the assertion that Ellis Island is in the District of New Jersey and therefore within the jurisdiction of the District Court for that district.

█ The island is property of the United States, ceded to the United States by the State of New York in 1808 and since 1891 used by the United States as an Immigration Station for the Port of New York. When it was property of New York it was within one or another of the counties of that state or within the waters thereof. With respect to federal jurisdiction over such counties and their waters, the United States by statute (28 USCA § 178, Judicial Code, § 97) prescribed the territorial limits of the Southern District of New York and the Eastern District of New York as embracing certain counties "with the waters thereof" and provided that the District Courts for the Southern and Eastern Districts "shall have concurrent jurisdiction over the waters within the counties of New York, Kings, Queens, Nassau, Richmond, and Suffolk. * * *" This it would seem vested federal jurisdiction with respect to Ellis Island in the District Courts of the two named New York districts. But the relator, showing that by the Act of June 28, 1834 (4 Stat. 708) a boundary line between the states of New York and New Jersey had been run down the Hudson River to the sea, "submitted" that Ellis Island is on the westerly or New Jersey side of the harbor and therefore is in—or "not entirely" outside—the District of New Jersey and within at least "the concurrent jurisdiction of the District Court for the District of New Jersey and the District Courts for the Eastern and Southern Districts of New York." Jurisdiction is determined by statute, not by geography. The statute expressly, and therefore exclusively, placed federal jurisdiction of Ellis Island in the District Courts of the two named New York districts. The running of a boundary line in 1834 through the waters dividing the states of New York and New Jersey cannot disturb the statutory designation of jurisdiction in 1910.

█ Therefore we hold that the judge of the District Court for the District of New Jersey had no power to issue the writ of habeas corpus prayed for in this case, to be executed outside of the territorial jurisdiction of his court. Ex parte Gouyet (D. C.) 175 Fed. 230, 233; Ex parte Yee Hick Ho (D. C.) 33 F.(2d) 360. The writ was unlawfully issued.

But the relator, in aid of his contention that the District Court for the District of New Jersey had jurisdiction of this petition, relies upon the fact that the jurisdiction of the Commissioner of Immigration at the Port of New York is not limited to New York but extends into the District of New Jersey as far as Princeton. The jurisdiction of the Commissioner of Immigration has no relation to and can in nowise affect the statutory territorial jurisdiction of the District Court for the District of New Jersey. That is an altogether different matter. If the Commissioner should do some unlawful act within the District of New Jersey, the District Court for that district might have jurisdiction over him as it would have over any other person charged with federal wrongdoing in that district. But the Commissioner did not arrest the relator in New Jersey and confine him in that district; the relator surrendered himself

to the Commissioner at Ellis Island and the Commissioner confined him in a New York district. So the transaction was wholly outside the District of New Jersey.

■ But the relator, doubtless anticipating this legal difficulty, made his second contention in the alternative, that, even so, the Commissioner in producing the relator in response to the mandate of the writ waived the question of jurisdiction of the District Court for the District of New Jersey to compel the presence of the relator and that, being actually produced, the court had jurisdiction over him notwithstanding the unlawful process.

In support of this contention the relator relies on one federal and two state decisions, the latter of which are affected by state statutes.

In Simmons v. Georgia Iron & Coal Co., 117 Ga. 305, 43 S. E. 780, 61 L. R. A. 739, the Supreme Court of Georgia made the statement that the trial court had power on habeas corpus to inquire into the restraint of the relator when produced in response to a writ unlawfully issued. Yet the court based its judgment largely on the authority of the judge to issue the writ because the place and act of detention were within his territorial jurisdiction.

In Ex parte Mayen, 49 Cal. App. 531, 193 P. 813, the reviewing court in California, citing the Georgia case, made a similar statement of law in a somewhat like situation. But in the same opinion the court expressed its thought that the court below had jurisdiction to issue such a writ to any part of the state, thus raising a doubt as to the decisive force of its previous pronouncement.

In Ex parte Fong Yim (D. C.) 134 F. 938, it appears that two Chinese children had been denied admittance to the United States and had been detained in the Northern District of New York by the chief officer of the Chinese exclusion laws for the state of New York. A writ of habeas corpus was issued by the District Court for the Southern District of New York and its validity challenged for lack of jurisdiction. The court conceded that ordinarily it would have no jurisdiction to inquire by habeas corpus into the cause of the detention of the children in the Northern District yet, where the respondent officer, whose principal office was in the Southern District,

admitted that he had the children in his custody and there was a stipulation entered into between counsel waiving their production in court, it held that such stipulation is an admission of the officer's power and obligation under the writ to produce the children and justified further and complete consideration of the case. Ex parte Ng Quong Ming (D. C.) 135 F. 378, 379.

Without accepting or rejecting the law of these cases, we think they are distinguishable from the case at bar on the facts. Here a judge of the District Court for the District of New Jersey issued the writ of habeas corpus to be executed beyond the court's territorial jurisdiction and therefore without authority. Not knowing just what to do, the Commissioner made a formal return of the writ, stating compliance with its mandate by producing the relator but, at the same time, challenging the power of the court and the legality of the writ by saying:

"The (respondent) admits that the relator is in the custody of the Commissioner of Immigration at Ellis Island, New York Harbor, which island is within the territorial jurisdiction of the United States District Court for the Southern District of New York and therefore this Court is without power or authority to issue a writ of habeas corpus in this case."

Thus, at most, the Commissioner responded to the mandate of the writ qualifiedly, that is, he made a special appearance and a qualified production of the relator, neither of which acts could confer jurisdiction on the District Court or otherwise validate what theretofore was invalid. He was simply there with the man in his custody, openly resisting the authority of the court in the only way he could do it, unless he should hazard the consequences of disobedience.

We are of opinion that the judge of the District Court for the District of New Jersey was, as he probably suspected, without power to issue the writ beyond the territorial jurisdiction of his court; and that, having unlawfully issued the writ, the lack of jurisdiction, as evidently he decided, was not cured by the special appearance of the respondent and his qualified production of the relator.

The order dismissing the writ and remanding the relator is affirmed.